IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARY LOU GARCIA,**                           Case Number 1:13cv1885

    Plaintiff,

    v.                                              Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                       MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Mary Lou Garcia seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on February 19, 2010, alleging disability since March 3, 2009, due to bipolar disorder, anxiety, diabetes, and bone spurs in her left foot. (Tr. 12, 163, 170, 226). Her claims were denied initially and on reconsideration. (Tr. 86, 92, 107, 114). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 123). At the hearing, Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (Tr. 28). On May 24, 2012, the ALJ concluded Plaintiff was not disabled. (Tr. 9). Plaintiff's request for review was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr.

1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On August 27, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

Plaintiff challenges only the ALJ's conclusions regarding her physical limitations (Doc. 16) and therefore waives any claims about the determinations of her mental impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Specifically, Plaintiff challenges only the ALJ's treatment of Dr. Moufawad's opinion and the ALJ's omission of restrictions related to Plaintiff's foot pain and carpal tunnel syndrome. (Doc. 16, at 11, 16). Accordingly, the Court addresses only the record evidence pertaining to Plaintiff's arguments.

### *Plaintiff's Background, Vocational Experience, and Daily Activities*

Born September 18, 1963, Plaintiff was 48 years old at the time of the ALJ hearing decision. (Tr. 163). She has an eleventh-grade education and past relevant work experience as a housekeeper, stadium cleaner, and warehouse packer. (Tr. 19, 34, 241, 600).

Plaintiff lived in a house with her boyfriend and eleven-year-old son. (Tr. 34, 210). Her daughter lived with her up until three days before the hearing, at which time she abruptly moved out. (Tr. 59). In 2009, Plaintiff spent nine months in jail for receiving stolen property. (Tr. 67, 613). Plaintiff's description of her hobbies, daily activities, and functional abilities is varied, allegedly because her condition worsened since Plaintiff claimed disability in 2009. (Tr. 50-51).

To this end, in 2009 Plaintiff's hobbies included playing bingo, bowling, crocheting, and completing word-search puzzles. (Tr. 214, 601). In a 2010 function report, Plaintiff said she watched television, crocheted, and played cards once in a while. (Tr. 269). Also in 2010, Plaintiff

told her counselor she had no hobbies or interests. (Tr. 864). At the 2012 hearing, Plaintiff testified her hobbies were limited to completing an occasional puzzle. (Tr. 51).

Regarding daily activities, Plaintiff consistently averred she had no trouble with personal care. (Tr. 212, 266-67). In a 2009 function report, Plaintiff indicated she took her daughter to the bus stop, got her son ready to get on the bus, did housework, picked her kids up from school, took her daughter to weekly counseling sessions, prepared meals, watched television, did laundry twice per week, drove a car, and grocery shopped three times per week. (Tr. 211-13). In 2010, Plaintiff said pain limited her ability to clean but she could drive, run simple errands, pick her son up from school, cook, shop every three weeks, and watch television. (Tr. 263, 265, 267-68, 270). However, she could no longer take her son to school in the morning because she did not have the energy to wake up and could not be around people. (Tr. 266). In 2011, Plaintiff indicated she had "no energy to do laundry" and could not carry the laundry basket to the basement. (Tr. 299). At the hearing in 2012, Plaintiff said she had not cooked or cleaned for about a year. (Tr. 50-51).

Plaintiff's statements about her functional abilities are similarly varied. In 2009, Plaintiff said she could not lift anything and could only walk one block before taking a ten minute break. (Tr. 215). In 2010, Plaintiff said she could walk for up to two blocks, stand for up to twenty minutes, and lift up to twenty pounds. (Tr. 263, 270). At the 2012 hearing, Plaintiff said she could walk for about thirty minutes, stand or sit for up to an hour and a half, and lift up to seven or eight pounds. (Tr. 45, 64).

*Medical Evidence*

Beginning in 2004 and prior to the alleged onset date, Plaintiff treated with Shreeniwas Lele, M.D., for a number of conditions including diabetes, smoking cessation, rhinosinusitis,

3

pharyngitis, bronchitis, back pain, foot pain, heel spur, hematuria, hand pain, bilateral carpal tunnel syndrome, foot wound and cellulitis, weight loss, and left foot plantar fasciitis. (Tr. 316-51). As part of her treatment, Dr. Lele referred Plaintiff to several specialists and performed various diagnostic tests. (Tr. 352-427). Dr. Lele wrote several letters requesting Plaintiff receive time off work or accommodations. (Tr. 429-33).

Beginning in 2006 and before the alleged onset date, Plaintiff saw Sami Moufawad, M.D., several times with complaints of pain in her lower back and between the shoulder blades. (Tr. 490, 493, 503, 505-26). Dr. Moufawad generally prescribed a TENS unit, Percocet or Vicodin, Lyrica, and Flexural and recommended a home exercise program. (Tr. 490-91, 494-95, 503, 505-27). Plaintiff also complained of foot pain during many of these visits. (Tr. 508-10, 514, 517-25).

On March 4, 2009, one day after her alleged onset date, Plaintiff reported to her mental health treatment provider, Michael Prime, M.D., that she was dealing with pending charges of theft and recently fired from work "due to missed days." (Tr. 481).

On March 30, 2009 and upon referral from Dr. Lele, Plaintiff treated with Lawrence Martin, M.D., FACP, FCCP, who indicated Plaintiff had a long history of tobacco abuse and provided a sample of Chantix. (Tr. 428). Plaintiff averred she had recently been laid off from her hotel housekeeping job due to the recession and could no longer afford cigarettes. (Tr. 428).

On September 29, 2009, Plaintiff underwent a diabetic podiatry consultation. (Tr. 675). On examination, vibratory sensation, pressure sensation, and plain perception/or temperature were present and there was no evidence of ulcer, although Plaintiff complained of painful heels from a previous surgery. (Tr. 675). Plaintiff was assessed with plantar fasciitis and prescribed Motrin. (Tr. 675).

4

Plaintiff returned to Dr. Lele on March 6, 2010 complaining of weakness and uncontrolled blood sugar. (Tr. 887). Dr. Lele continued Plaintiff's prescription for Metformin, added Amaryl, advised Plaintiff to keep a food diary, and referred her to a dietician for diabetic education. (Tr. 888). At a follow-up visit on March 15, Plaintiff said Amaryl and Prilosec were helping her symptoms. (Tr. 889). However, she complained of tingling in her arms and legs, causing Dr. Lele to suspect diabetic neuropathy and prescribe Neurontin. (Tr. 889).

On August 24, 2010, shortly after Plaintiff returned from a trip to California, she complained to Dr. Lele of severe abdominal pain, nausea, and vomiting. (Tr. 891). Dr. Lele ordered diagnostic testing, prescribed medication, and asked her to return in a few days. (Tr. 891). Two days later, Dr. Lele referred Plaintiff to a gastrointestinal specialist for the abdominal pain and prescribed Carafate in addition to Prilosec for acid reflux. (Tr. 892). Plaintiff saw Dr. Lele on September 14, 2010 and October 4, 2010 for generally unrelated matters. (Tr. 893-94).

Plaintiff returned to Dr. Moufawad on October 27, 2010, complaining of lower back pain and pain in the right lower limb. (Tr. 947). Dr. Moufawad performed a physical examination and reviewed a 2009 x-ray revealing listhesis at L4-L5 and a 2009 MRI revealing mild degenerative disc disease at L5-S1, broad based posterior disc bulge, a herniated nucleus pulposus at L5-S1, and face arthrosis at L4-L5. (Tr. 948). His impression was lumbar herniated nucleus pulposus at L5-S1, extruded disc at L4-L5, lumbar degenerative disc disease, and lumbar sprain. (Tr. 948). Dr. Moufawad recommended L5 transforaminal epidural steroid injections, a TENS unit, Tramadol, Zipsor, and a home exercise program. (Tr. 949).

On November 12, 2010, Plaintiff complained to Dr. Moufawad of foot pain despite the fact her diabetes was well controlled. (Tr. 1018). Dr. Moufawad recommended Plaintiff continue her home exercise program, Percocet, and the TENS unit and add Neurontin. (Tr. 1018-19).

5

On November 17, 2010, Plaintiff averred her medications only helped for a few hours and she continued to have pain in her back and lower-right limb. (Tr. 958). Dr. Moufawad prescribed Vicodin and advised she follow a home exercise plan. (Tr. 959).

On December 15, 2010, Plaintiff said Vicodin reduced her pain "some". (Tr. 965). Dr. Moufawad began a trial for the TENS unit, held off on injections per patient instructions, continued Vicodin, added Savella, and recommended a home exercise plan. (Tr. 966). Plaintiff underwent a lumbar transforaminal steroid injection with fluoroscopic guidance on January 3, 2011. (Tr. 967).

On January 10, 2011, Plaintiff presented to Dr. Lele with a new complaint of back pain with radiculopathy. (Tr. 895). Dr. Lele ordered an x-ray, which revealed mild multilevel discogenic degenerative changes of the lumbar spine. (Tr. 896, 924, 1021).

Plaintiff continued to have pain in her lower back radiating to the lower limbs on January 21, 2011, exacerbated with bending, lifting, and sometimes coughing. (Tr. 1016). She said she also continued to have pain her feet even though her diabetes was controlled. (Tr. 1016). Dr. Moufawad recommended Plaintiff continue home exercises, added methadone, reduced the dose of Percocet, continued the TENS unit and Neurontin, and ordered an electrodiagnostic study of the lower limbs. (Tr. 1017). That study, administered on February 18, 2011, revealed bilateral L5 motor radiculopathy and evidence of axonal loss distally in the sensory nerves compatible with axonal sensory peripheral neuropathy, which could be seen in the case of a metabolic process such as diabetes mellitus. (Tr. 1026-28).

In February of 2011, Plaintiff told Dr. Lele her back pain was better and she felt okay overall. (Tr. 897). However, on May 24, 2011, Plaintiff said she felt "exhausted, tired, and fatigued", had "excruciating" back pain radiating into her leg, insomnia, and high blood sugar.

6

(Tr. 1002). Dr. Lele assessed type 2 diabetes, diabetic nephropathy, high cholesterol, back pain stabilized with nerve block, GERD, insomnia, and postmenopausal status. (Tr. 1002). On June 10, 2011, Plaintiff told Dr. Lele she was excited to go to California, and was doing well overall. (Tr. 1003).

From January 31, 2011 through September 30, 2011, Plaintiff said that with medication, she was able to function, perform activities of daily living, walk without difficulty, and travel to California with well-controlled pain. (Tr. 1021, 1023-24, 1029, 1038). However, at times she reported increased pain (particularly in her feet), use of a cane, trouble with activities of daily living, and decreased energy, stamina, and appetite. (Tr. 960, 1021, 1023). Dr. Moufawad adjusted Plaintiff's medications accordingly. (Tr. 951, 961, 1022, 1025). On August 5, 2011, Plaintiff said she was not working because the pain was not completely gone and she could not find a job. (Tr. 1024).

On September 30, 2011, Dr. Moufawad completed a medical source statement, where he indicated Plaintiff could lift or carry up to ten pounds due to cervical facet pain with dysfunction; stand, walk, or sit for up to three hours in an eight-hour workday and for one-half hour without interruption due to bilateral radiculopathy; could rarely or never climb, balance, stoop, crouch, kneel, crawl, reach, feel, push, pull, or manipulate (finely or grossly); occasionally handle; could not be exposed to heights, moving machinery, or temperature extremes; would require frequent breaks and a sit/stand option; and had severe pain. (Tr. 1033-34).

An EMG of Plaintiff's wrists taken on November 28, 2011 revealed mild carpal tunnel syndrome. (Tr. 1063-64).

7

On January 12, 2012, Plaintiff complained of increased pain in her feet and symptoms of carpal tunnel syndrome. (Tr. 1059). Over Plaintiff's request, Dr. Moufawad declined to increase doses of medication and recommended she continue her treatment regimen. (Tr. 1059-60).

On March 16, 2012, Plaintiff told Dr. Moufawad she was working in housekeeping and her symptoms were controlled with medications and the TENS unit, enabling her to complete her activities of daily living. (Tr. 1061). After the ALJ hearing, Dr. Moufawad submitted a letter indicating she was in fact not working in housekeeping at the time, but meant to say she helped a friend fix her house, which aggravated the pain in her back and legs. (Tr. 1068).

On December 19, 2011, after postponing the procedure, Plaintiff underwent draining of an ingrown nail/abscess. (Tr. 1036, 1058). She also complained to Jeffrey A. Halpert, D.P.M., of severe heel pain bilaterally, for which she was later fitted for orthotics. (Tr. 1036, 1058). Her prior history for surgical removal of a bone spur was noted. (Tr. 1037).

*State Agency Opinion Evidence*

On April 29, 2011, state agency medical consultant James Gahman, M.D., examined Plaintiff's medical records and determined she had the physical residual functional capacity ("RFC") to lift or carry 50 pounds occasionally and 25 pounds frequently; stand, walk, or sit with normal breaks for a total of six hours in an eight-hour workday; and push or pull without limitation. (Tr. 992). According to Dr. Gahman, she had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 993-95).

Consultative examiner Mitchell Wax, Ph.D., examined Plaintiff and evaluated her mental functional capacity. (Tr. 861). He discussed Plaintiff's familial, educational, medical, and vocational history, noting that Plaintiff had eleven children but only lived with her ten year old and had no contact with six. (Tr. 861). Dr. Wax indicated Plaintiff was a good cook who cooked

8

twice a week, did dishes and laundry, cleaned the house regularly, shopped, and watched television. (Tr. 864-65).

*ALJ Decision*

The ALJ determined Plaintiff suffered from severe impairments of L5 radiculopathy, diabetes mellitus, mood disorder, and personality disorder. (Tr. 14). Next, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 15). The ALJ found Plaintiff had the RFC to perform a range of medium work with certain non-exertional limitations. (Tr. 16). Considering the RFC, the ALJ determined Plaintiff was capable of past relevant work as a housekeeper, stadium cleaner, and warehouse packer. (Tr. 19). Thus, the ALJ determined Plaintiff was not disabled. (Tr. 25).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 and § 416.920 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can she perform past relevant work?

5. Can the claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if she satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f); 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ erred by: 1) affording little weight to the opinion of treating physician Dr. Moufawad; and 2) failing to find Plaintiff had severe impairments of plantar fasciitis, heel spurs, and carpal tunnel syndrome. (Doc. 16, at 11, 16). Each argument is addressed in turn.

*Treating Physician Rule*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* The ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id.*

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "If the ALJ does not accord the opinion of the treating source controlling weight, it must apply certain

11

factors" to assign weight to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.*

In 2011, Dr. Moufawad opined Plaintiff could lift or carry up to ten pounds; stand, walk, or sit for up to three hours in an eight-hour workday and for one-half hour without interruption; never climb, balance, stoop, crouch, kneel, crawl, reach, feel, push, pull, or manipulate (finely or grossly); occasionally handle; could not be exposed to heights, moving machinery, or temperature extremes; required frequent breaks and a sit/stand option; and had severe pain. (Tr. 1033-34). The ALJ afforded little weight to treating physician Dr. Moufawad's opinion because it was inconsistent with Plaintiff's "own statement of her abilities". (Tr. 18).  Plaintiff claims this analysis falls short of the "good reasons" requirement.

However, the ALJ was not required to conduct a factor-by-factor analysis of Dr. Moufawad's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Blakely*, 581 F.3d at 407. Moreover, the ALJ discussed Plaintiff's inconsistent statements in the body of her RFC decision. "The fact that the ALJ did not analyze the medical evidence for a second time (or refer to her previous analysis) when rejecting Dr. [Moufawad's] opinion does not necessitate remand of Plaintiff's case." *Dailey v. Colvin*, 2014 U.S. Dist. LEXIS 82267, at *23 (N.D. Ohio) (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006)).

As the ALJ pointed out, in a function report Plaintiff alleged she could lift twenty pounds; but at the hearing, she testified she could only lift seven or eight. (Tr. 17, 45, 270). In

addition to challenging her credibility, Plaintiff's statements suggest her abilities exceed Dr. Moufawad's restriction of lifting no more than a maximum of ten pounds. (Tr. 1033).

Similarly, Plaintiff claimed in her function report she could only walk for one or two blocks; yet at the hearing, she testified she could walk for thirty minutes and sit or stand for up to an hour and a half. (Tr. 17, 45, 64, 263, 270). Although Plaintiff's testimony regarding her ability to walk for thirty minutes is consistent with Dr. Moufawad's opinion, her stated level of abilities to sit or stand for an hour and a half are inconsistent with Dr. Moufawad's finding that limited Plaintiff to sitting or standing for only thirty minutes without interruption. (Tr. 1033). As the ALJ suggested, Plaintiff's testimony demonstrates she is capable of more than Dr. Moufawad's limiting opinion.

Nevertheless, even if the ALJ did not provide sufficient reasons for discrediting Dr. Moufawad's opinion, the ALJ's error is excused as harmless. A violation of the treating physician rule is harmless error if: 1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; 2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or 3) "where the Commissioner has met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547.

In this case, Dr. Moufawad's opinion is not "patently deficient" nor did the ALJ adopt all of Dr. Moufawad's functional limitations into the RFC. However, after close and careful review of the ALJ's decision in its entirety, the Court finds the ALJ satisfied the goals of the treating physician rule, i.e. to ensure adequacy of review and to permit the claimant to understand the disposition of her case. *Coldiron v. Comm. of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010).

13

"An ALJ may accomplish the goals of this procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Id*. (citing *Nelson*, 195 F. App'x at 470-72). The Court looks to the ALJ's decision, as opposed to the other evidence in the record, for support. *Coldiron*, 391 F. App'x at 440. For the following reasons, the Court finds the ALJ's evaluation of Plaintiff's credibility, the evidence of record, and treatment of other opinion evidence undermines the consistency of Dr. Moufawad's opinion with the record as a whole.

As discussed above, the ALJ directly attacked Plaintiff's inconsistent statements regarding her abilities. These statements challenge Plaintiff's credibility. Moreover, they undermine Dr. Moufawad's restrictive opinion.

Additionally, the ALJ indirectly attacked the consistency of Dr. Moufawad's opinion with the record as a whole. Regarding daily activities, the ALJ indicated Plaintiff took care of her children and lived with her family. (Tr. 18). The ALJ also recalled how Plaintiff reported to Drs. Moufawad and Wax that she was able to complete all of her activities of daily living. (Tr. 14-15). To this end, Plaintiff told Dr. Wax she was a good cook who cooked twice a week, did dishes and laundry, cleaned the house regularly, shopped, and watched television. (Tr. 15, *referring to*, 864-65). She reported to Dr. Moufawad several times in 2011 that with pain medication, she was able to function and do her activities of daily living, she had no recent difficulties with walking, and her pain was well-controlled during her trip to California. (Tr. 15, *referring to*, 1021, 1023-24, 1029; Tr. 17, *referring to*, Tr. 1038, 1061). In this vein, the ALJ noted Plaintiff's medication helped her with pain and allowed her to function and perform activities of daily living. (Tr. 17). Further, the ALJ indicated Plaintiff's diabetes was controlled when she was compliant with treatment. (Tr. 18). These activities (and reports regarding the same) are inconsistent with Dr.

Moufawad's opinion limiting Plaintiff to sedentary work.

The ALJ also discussed Plaintiff's statement to Dr. Moufawad that she was working in 2012, despite her claims she was not working throughout the relevant time period. (Tr. 17). This undermines Plaintiff's credibility as well as the restrictiveness of Dr. Moufawad's opinion, as it suggests she was capable of more than sedentary work.

Plaintiff takes issue with the ALJ's failure to mention a letter written by Dr. Moufawad after the hearing, which stated:

> [Plaintiff] wanted to point out that she was not working. The records from March 16th that reflected her working in house keeping are not accurate. She actually helped a friend fixing her house just one time and that aggravated the pain in the back and legs.

(Tr. 1068).

Indeed, the ALJ did not acknowledge this letter, which was submitted after the hearing, ostensibly because it was outside the relevant time period. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). Plaintiff does not point to a particular rule of law demonstrating that the ALJ was required to consider the letter. (Doc. 16, at 14). Notably, Plaintiff's counsel did not object to the evidence of record and did not seek to add any additional documents at the hearing. (Tr. 31-32). Furthermore, even if the letter were considered, it still indicates Plaintiff was able to help fix up a house, which is inconsistent with her claims of debilitating pain and Dr. Moufawad's limiting opinion.

Moreover, the ALJ indirectly attacked Dr. Moufawad's opinion through explanation of the weight afforded to the state agency consultants' and examiners' opinions. (Tr. 18). These physicians found Plaintiff could engage in lifting associated with medium work, which the ALJ said was consistent with Plaintiff's claim that she did not have any upper extremity, shoulder, or

15

wrist difficulties that would limit her ability to lift more than 20 pounds. (Tr. 18). Indeed, at the hearing, Plaintiff's counsel described her carpal tunnel syndrome as "mild" and Plaintiff alleged only some problems with grip due to tingling and pain in her wrists. (Tr. 33, 42-44). These statements are inconsistent with Dr. Moufawad's finding that Plaintiff could only engage in sedentary work. 20 C.F.R. § 404.1567(a) (sedentary work involves lifting no more than ten pounds). The ALJ also afforded significant weight to the opinions of the state agency consultants and consultative examiners because they were consistent with Plaintiff's reported daily activities, abilities, and the objective medical evidence, as discussed above. (Tr. 18).

To the extent Plaintiff argues the ALJ erred by affording weight to state agency examiners, that argument is without merit because it is clear why the ALJ deemed Dr. Moufawad's opinion non-controlling. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (an ALJ may afford weight to a nonexamining or nontreating source "but only if a treating-source opinion is not deemed controlling.").

In sum, the ALJ provided sufficiently good reasons to afford Dr. Moufawad's opinion little weight. Moreover, the ALJ's decision as a whole makes her reasons for discrediting Dr. Moufawad's restrictive opinion clear. Following careful review of the ALJ's decision, the ALJ's treatment of the opinion evidence is affirmed. *See*, *Jones*, 336 F.3d at 477 (the Court must affirm even where substantial evidence supports an alternative result); and *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (where remand would be an "idle and useless formality", the Court is not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.*, 395 U.S. 759, 766 n.6 (1969)).

*Step Two – Severe Impairments and RFC Determination*

Next, Plaintiff argues the ALJ erred by not including Plaintiff's foot pain and carpal tunnel syndrome among her severe impairments. (Doc. 16, at 16). However, at the end of her analysis, Plaintiff concedes that because the ALJ found Plaintiff suffered from other severe impairments, any step two error was harmless. (Doc. 16, at 19); 20 C.F.R. § 416.920(c) (relevant inquiry at step two is whether "you do not have *any*" severe impairments (emphasis added)); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009). Therefore, Plaintiff's step two argument is not well-taken.

Alternatively, Plaintiff claims the ALJ was "required to include all relevant limitations shown by the evidence in the formulation of the [RFC], and in formulating hypothetical questions to the [VE]." (Doc. 16, at 19).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1.

Here, the ALJ considered Plaintiff's carpal tunnel syndrome and foot impairments but found they did not limit her beyond a range of medium work. (Tr. 14-15). Her decision is supported by substantial evidence.

Regarding foot pain, the ALJ indicated there was no evidence to show Plaintiff's ability to complete basic work activities would be limited and she was able to complete all activities of daily living according to statements she made to various physicians. (Tr. 14-15). Indeed, Plaintiff

17

indicated improved symptoms to Dr. Moufawad (Tr. 950, 1021, 1023) and Dr. Lele (Tr. 897, 1003). Moreover, the record does not suggest Plaintiff was functionally limited due to foot pain.

Concerning Plaintiff's carpal tunnel syndrome, the ALJ found no acceptable clinical or laboratory diagnostic techniques to demonstrate impairment and insufficient evidence to establish the condition as severe. (Tr. 15). The Commissioner concedes that there was actually EMG testing done in November 2011, but suggests any error made by the ALJ was harmless as the findings revealed only mild carpal tunnel syndrome and Dr. Moufawad described the results as essentially normal. (Doc. 17, at 19; Tr. 1063-64). Following review of the relevant report, the Court agrees with the Commissioner, and finds the lack of objective evidence supporting Plaintiff's claim of debilitating pain from carpal tunnel syndrome supported by substantial evidence.

For these reasons, the ALJ did not err with respect to her treatment of Plaintiff's foot impairments and carpal tunnel syndrome.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. Therefore, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/James R. Knepp, II  
United States Magistrate Judge